1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORENA G. CUNANAN, | ) Case No. CV 07-4638-OP |
| Plaintiff, | ) |
| vs. | ) MEMORANDUM OPINION AND |
| MICHAEL J. ASTRUE, | ) ORDER |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the two disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 4, 6.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# **DISPUTED ISSUES**

As reflected in the JS, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered the opinions of Plaintiff's treating physician and the Agreed Medical Examiner ("AME"); and
2. Whether the ALJ properly evaluated Plaintiff's testimony.

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /
/ / /

## III.

## DISCUSSION

**A.    The ALJ Properly Considered the Opinions of Plaintiff's Treating Physician and the Agreed Medical Examiner.**

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If, the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Johnson v. Shalala, 60 F.3d 1428, 1423, 1433 (9th Cir. 1995) (self-contradictory nature of treating physician opinion was "clear and convincing" reason for rejection). However, the ALJ is not bound to follow the opinion of a medical practitioner when deciding vocational capabilities. 20 C.F.R § 404.1527(e)(2) (determination of residual functional capacity and application of vocational factors is reserved to the Commissioner).

Plaintiff contends the ALJ erred in discounting the opinions of Plaintiff's treating physician, Dr. Silver, and of the agreed medical examiner ("AME") in her workers compensation case, Dr. Mouradian. (JS at 3.) Specifically, although the ALJ stated he was giving greater weight to Dr. Silver's treating physician opinion (AR at 20), he failed to properly consider Dr. Silver's restrictive findings regarding

Plaintiff's functional limitations.[3] (JS at 14.) With respect to the AME's report, Plaintiff argues that the ALJ improperly ignored this significant and probative report and failed to provide clear and convincing reasons for rejecting it.[4] (Id. at 5.)

### 1.  **Dr. Silver.**

In his decision, the ALJ stated he "gives greater weight to the functional capacity assessment of the treating orthopedist, Dr. Silver, as his specialty and treating relationship with the claimant allow him the best opportunity to evaluate the claimant's ability to perform work abilities." (AR at 20.)

In Dr. Silver's July 28, 2003, "Final Comprehensive Orthopedic Evaluation," he stated that Plaintiff had lost approximately 25% of her pre-injury capacity for lifting, pushing, pulling, grasping, pinching, holding, torquing and performing other activities. (AR at 91.) With respect to her left shoulder, he found she had lost approximately 25% of her pre-injury capacity for lifting and should be restricted from heavy lifting. (Id.) In that report, in a section labeled "Vocational Rehabilitation," Dr. Silver concluded that Plaintiff could not return to her work as an underwriter with these restrictions without some vocational rehabilitation "because of the repetitive nature of the tasks that are required of the shoulders in both overhead work and repetitive tasks." (Id.) Plaintiff contends the ALJ improperly rejected this finding of complete disability from her prior work without providing clear and convincing reasons for doing so.

Preliminarily, the opinion of a physician as to vocational factors is not

---

[3] Dr. Silver opined that Plaintiff was precluded from her past work as an underwriter because it involved overhead work and repetitive tasks. (AR at 91.)

[4] Plaintiff alleges Dr. Mouradian's report also supports a finding that Plaintiff is precluded from her past work as an underwriter because of the repetitive nature of that prior work as well as overhead reaching. (JS at 5.)

accorded "any special significance," and the final responsibility for deciding the application of vocational factors on the nature and severity of any impairments, is a decision reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(2) (stating that a finding on the application of vocational factors to the nature and severity of an impairment is not a medical opinion but an administrative finding that is reserved to the Commissioner). Thus, the ALJ was not required to accept Dr. Silver's determination that Plaintiff's restrictions prevented her from performing her prior work as an underwriter.[5]

Moreover, the ALJ noted that the vocational expert classified Plaintiff's past relevant work as an underwriter as skilled and sedentary, and testified that even taking into account Dr. Silver's residual functional capacity assessment, Plaintiff would still be able to return to the underwriter position. (Id. at 21, 408-10.)

As the ALJ's findings are consistent with Dr. Silver's restrictions, and supported by substantial evidence, Plaintiff's contentions regarding this issue lack merit.

/ / /

---

[5] The Court also notes, however, that on December 26, 2003, pursuant to a "Comprehensive Orthopedic Re-Evaluation," Dr. Silver apparently had received a "job analysis report" outlining the duties of an underwriter and was asked to determine whether Plaintiff could return to her job. (AR at 87.) He noted that he had previously recommended certain work restrictions, including no heavy lifting and no overhead shoulder work. (Id. at 88.) He concluded that "[i]f she is going to go back to that same type of work, the patient would have to work within these restrictions." (Id.) More importantly, Dr. Silver went on to state that "[i]n that job analysis, the only thing that I see that would be precluded is the lifting of file boxes of 25 lbs or more and if the file worker had assistance with these and also with any vigorous pulling or pushing, then this job could be accommodated." (Id.) Thus, despite Plaintiff's contentions to the contrary (JS at 4), Dr. Silver ultimately concluded that Plaintiff's functional restrictions did not preclude her from working as an underwriter.

### 2. **Dr. Mouradian.**

Plaintiff also claims that the ALJ improperly failed to consider Dr. Mouradian's March 31, 2004, AME report, and, therefore, failed to provide clear and convincing reasons for rejecting that opinion. (JS at 5.)

In Dr. Mouradian's report, he stated that Plaintiff had a neck condition that precluded her from holding her neck in one position for prolonged periods, from repetitive movement of the head and neck to their extremes, and from repetitive overhead work. (AR at 147.) He also opined that Plaintiff could not perform heavy lifting, or repetitive forceful pushing or pulling. (Id. at 147-48.)

The AME's opinion is not entitled to the weight given a treating physician because the AME, much like a consultative examiner, was not hired to treat Plaintiff, but rather to objectively evaluate Plaintiff's condition for a workers compensation claim.[6] Magallanes, 881 F.2d 751. Moreover, the decision of another governmental agency under its own rules is neither dispositive nor binding to the analysis required under social security law. 20 C.F.R. § 404.1504.

Other than the fact that Dr. Silver did not find any restrictions on Plaintiff's neck movement (AR at 91), Dr. Mouradian's report is consistent with Dr. Silver's report. It also is consistent with a July 2005 examination by Dr. To, the social security examining physician, who found that Plaintiff had no significant musculoskeletal limitations. (AR at 12.) The ALJ gave deference to Dr. Silver's opinion because of his treating physician status, and found that the musculoskeletal restrictions assessed by Dr. Silver existed. (Id.) Sufficient evidence supported the ALJ's determination to discount the AME's finding with respect to any restriction on neck movement.

Accordingly, the Court finds that the ALJ's reasons for rejecting Dr. Silver's

---

[6] The AME is functionally similar to the consultative examiner in a social security case, but instead he consults on workers compensation claims.

vocational opinions, and for disregarding the AME report relating to alleged neck restriction, to be based on substantial evidence. Therefore, the Court finds that the ALJ properly considered the treating physician's and AME's reports.

**B.    The ALJ Did Not Err in Evaluating the Plaintiff's Testimony.**

The ALJ found that Plaintiff's subjective allegations were not fully credible. (AR at 12.) Plaintiff claims that the ALJ's credibility assessment was improper because Plaintiff's testimony was consistent with the objective medical findings. The Court does not agree.

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

Here, in evaluating Plaintiff's testimony, the ALJ, using ordinary techniques of credibility assessment and citing inconsistencies between Plaintiff's testimony and other representations, noted that Plaintiff testified she would have continued working at her previous job had it not moved locations. (AR at 20.) Additionally, despite alleging a disability onset of December 30, 2000, Plaintiff applied for and started receiving unemployment insurance in January 2001, receiving those benefits for six months. (Id. at 20, 397-98.) She was unable to explain at the hearing why she sought unemployment insurance during a period when she was allegedly disabled and unable to work. (Id.) See, e.g., Copeland v. Bowen, 861 F.3d 536, 542 (9th Cir. 1988) (court did not find claimant's testimony fully credible in light of the fact he received unemployment insurance benefits, apparently considering himself capable of work and holding himself out as such).

The ALJ also noted that Plaintiff's reported activities of daily living (i.e., light cooking and housekeeping, including fixing the bed, loading the dishwasher, doing laundry, grocery shopping, and dropping off/picking up her children), indicated that she is able to use her bilateral arms to sustain some level of work activity.

Finally, the ALJ considered the fact that although Plaintiff's medical records

1 showed she had some medically-based limitations in her functioning, the records
2 did not establish that her health problems rendered her incapable of sustaining any
3 kind of work activity. (AR at 12.)
4     Despite the ALJ's finding Plaintiff's testimony not entirely credible, he
5 nevertheless gave her the benefit of the doubt when he found she has an RFC to
6 perform a limited range of light work, and could perform her past relevant work as
7 an underwriter, a sedentary position. Thus, the ALJ provided clear and convincing
8 reasons, supported by substantial evidence, for discounting Plaintiff's testimony of
9 disabling pain.

## IV.

## ORDER

12     Accordingly, IT IS HEREBY ORDERED that Judgment be entered
13 affirming the decision of the Commissioner of Social Security, and dismissing this
14 action with prejudice.

18 DATED: September 3, 2008

HONORABLE OSWALD PARADA
United States Magistrate Judge